IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BARRY GENE KIDD, #212543, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:03-CV-989-ID |
| | ) | [WO] |
| | ) | |
| NAPHCARE MEDICAL SERVICES | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Barry Gene Kidd ["Kidd"], a state inmate, asserts that the defendants violated his constitutional rights by failing to provide him with necessary post-operative treatment after removal of a cyst from his buttocks and by denying him appropriate medical treatment for pain in his left hip and right side. Kidd names NaphCare Medical Services, Inc.; Dr. Soonier; nurse Bees nurse Helms; and nurse Shepard as defendants in this cause of action.[1] Kidd seeks monetary damages and adequate treatment for his pain.

The defendants filed a special report and supporting evidentiary materials addressing Kidd's claims for relief. Pursuant to the orders entered herein, the court deems it

---

[1]The correct names of the individual defendants are Dr. Mark Sonnier, Aaron Bee, Bonita Helms and Marion Sheppard. *Special Report of the Defendants - Court Doc. No. 12* at 1. For purposes of this Recommendation, the court will refer to the defendants as they are identified by Kidd in the complaint.

appropriate to treat the defendants' report as a motion for summary judgment. *See Order of January 13, 2004 - Court Doc. No. 13*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof and the plaintiff's response in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I. FACTS

On April 30, 2003 at the Elmore Community Hospital, Dr. England performed outpatient surgery on Kidd to remove a pilonidal cyst from his buttocks. *Inmate Medical Records of Barry Kidd - April 30, 2003 Operative Notes*. No complications occurred during the surgery. *Id*. Dr. England instructed Kidd to lie on his side as much as possible and avoid prolonged sitting, with no sitting for 48 hours after surgery. *Id.* Additionally, Dr. Soonier prescribed Motrin and Percogesic to alleviate any pain associated with the surgery. *Inmate Medical Records of Barry Kidd - Treatment Notes for April 30, 2003*. On May 1, 2003, medical personnel at the Staton Correctional Facility provided Kidd with a patient information slip advising him to lie on his side as much as possible and avoid prolonged sitting. *Inmate Medical Records of Barry Kidd - May 1, 2003 Health Care Unit Patient Information Slip*. This slip also ordered that Kidd not be required to work from May 1, 2003 until May 19, 2003. *Id*.

On May 7, 2003, correctional officials transported Kidd to his follow-up appointment with Dr. England.  *Inmate Medical Records of Barry Kidd - Hospital/Consultant Referral Form.*  At this time, Dr. England noted that the area is "doing well" and removed most of the sutures.  He instructed that the remaining sutures be removed "on 5/9/03 - if incision site opens then pack daily . . . keep incision site clean & dry."  *Id*.

On May 8, 2003, Dr. Soonier referred Kidd to the health care unit for examination. The attending nurse observed that Kidd ambulated to the unit without any difficulty.  Upon examination, the nurse noted a "clear pink discharge . . . to suture area to buttock."  *Inmate Medical Records of Barry Kidd  - May 8, 2003 Staton Health Care Unit Treatment Request and Record*.  The nurse determined that Kidd's condition was "satisfactory" and did not warrant treatment at that time.  *Id*.  Defendant Helms, the nurse practitioner, reviewed this diagnosis and agreed with the attending nurse. The following day, nurse Helms removed the packing and re-packed the area.  She also continued Kidd's prescriptions for Motrin and Percogesic.  *Inmate Medical Records of Barry Kidd - Treatment Notes for May 9, 2003*.

On May 12, 2003, defendant Helms removed the packing, cleansed the affected area and re-packed the wound.  *Inmate Medical Records of Barry Kidd - Physician's Progress Notes for May 12, 2003*; *Treatment Notes for May 12, 2003*.  Additionally, during this visit to the health care unit, Kidd complained of pain in his left hip.  Nurse Helms advised and Dr. Soonier requested that an X-ray be taken of Kidd's left hip.  On May 15, 2003,

Radiology Associates performed X-rays in accordance with the order of Dr. Soonier. The findings demonstrated "moderate degenerative changes are seen within joint space with narrowing of the joint greater inferiorly and subchondral sclerosis. The femoral head is fairly smooth and well corticated." *Inmate Medical Records of Barry Kidd - X-Ray Requisition and Report for May 15, 2003 X-Rays*. The radiologist's impression indicated "degenerative changes of the left hip. No acute fracture or subluxation." *Id*.

On May 16, 2003, nurse Helms changed "the packing of wound" and cleaned the area. *Inmate Medical Records of Barry Kidd - May 16, 2003 Treatment and Request Record*; *Treatment Notes for May 16, 2003*. Helms ordered that this procedure be repeated each time Kidd reported to the health care unit until the wound healed. *Id.* The records before this court reflect that medical personnel followed these instructions.

On May 20, 2003, Dr. Soonier examined Kidd. *Inmate Medical Records of Barry Kidd - Physician's Progress Notes for May 20, 2003*. He removed the packing, cleansed the wound and re-packed the area. *Id*. At this time, Dr. Soonier noted "good granulation tissue . . ." *Id*. He continued the order for routine changes of Kidd's packing but altered the type of gauze to be used. *Id*.; *Inmate Medical Records of Barry Kidd - May 20, 2003 Staton Health Care Unit Treatment Request and Record*. The medical records establish that health care personnel acted in accordance with Dr. Soonier's instructions. *Id*. The medical records further indicate that on May 21, 2003, nurse Helms added a prescription for Naprosyn in response to Kidd's continued complaints of pain. *Inmate Medical Records*

*of Barry Kidd - Treatment Notes for May 21, 2003.*

During Soonier's May 20, 2003 examination of Kidd, Kidd again complained of pain in his left hip. Dr. Soonier ordered another X-ray. On May 23, 2003, an X-ray of Kidd's pelvis and left hip was taken. The results demonstrated "no fracture or lytic lesion seen." *Inmate Medical Records of Barry Kidd - X-Ray Requisition and Report for May 23, 2003 X-Ray.* On June 9, 2003, Dr. Soonier performed an examination of Kidd and noted "good granulation tissue [with] good healing edges." *Inmate Medical Records of Barry Kidd - Physician's Progress Notes for June 9, 2003.* Soonier also changed Kidd's bandage at this time.

Kidd asserts that the defendants failed to provide him with adequate post-operative care. He also complains that after his surgery he experienced pain in his left hip and soreness on his right side for which the defendants did not provide appropriate medical treatment. The defendants deny they acted with deliberate indifference to Kidd's medical conditions and, instead, maintain that they provided Kidd with all necessary treatment for these conditions. The undisputed medical records indicate that medical personnel evaluated and provided treatment to Kidd each time he reported to the health care unit. The specific treatment prescribed depended upon the observations and evaluations of his condition by the attending health care professional. Additionally, to ensure continuous monitoring and evaluation of Kidd's post-operative condition, medical personnel placed a standing order in his medical file for changes to the packing of the surgical area. The

medical records further establish that defendants Helms and Soonier prescribed medications, including Motrin, Percogesic and Naprosen, in response to Kidd's complaints. Moreover, each time Kidd complained of pain in his hip, Dr. Soonier ordered X-rays in an effort to properly treat the symptoms about which Kidd complained. These X-rays failed to indicate the necessity for any treatment.

## II. STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by the defendants, Kidd is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be

granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-85 (11th Cir. 1996). Summary judgment is therefore appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990)

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, the plaintiff has failed to go beyond the pleadings and present admissible evidence necessary to establish that there is a genuine issue of material fact in order to preclude summary judgment.

### III. DISCUSSION

To prevail on an Eighth Amendment claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing medical treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, prison medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). "In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical

8

malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977))." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference).  A prison medical care provider may be held liable under the Eighth Amendment only for acting with deliberate indifference to an inmate's health when the provider knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994).

   The undisputed evidentiary materials submitted by the defendants demonstrate that prison medical personnel routinely examined the plaintiff, evaluated his complaints and responded in an appropriate manner to his requests for treatment.  *See Inmate Medical Records of Barry Kidd*.  These materials likewise establish that Dr. Soonier and other medical personnel prescribed various medications during their treatment of Kidd's surgical incision and complaints of pain.  *Id*.  It is therefore clear that the course of treatment undertaken by the defendants was neither grossly incompetent nor inadequate.

Although Kidd maintains that he should have received some other type of treatment, the mere fact that he desired a different mode of medical treatment does not amount to deliberate indifference. *Harris*, 941 F.2d at 1505. Kidd fails to present any evidence demonstrating that the defendants disregarded a substantial risk to his health by denying him adequate medical treatment for his post-operative incision and other complaints. In light of the foregoing, it is clear that Kidd has failed to establish that the defendants acted with deliberate indifference. Summary judgment is therefore due to be granted in favor of the defendants.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment filed by the defendants be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before March 13, 2006 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc*)*, adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 27th day of February, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE